IN THE UNITED STATES DISTRICT COURT
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

U. S. DISTRICT COURT
Southern District of Ga.
Filed in Office

M

1 2 5 20 16

Deputy Clerk

NORTH AMERICAN SPECIALTY       )
INSURANCE COMPANY,             )
                              )
        Plaintiff,            )
                              )
v.                            )       CASE NO. CV412-146
                              )
BULL RIVER MARINA, LLC; MARK  )
ALLEN WELLS; THOMAS W.        )
WILLIAMS, II; YVONNE WELLS;   )
DOUGLAS PITTS; CHRISTOPHER    )
TANNER;                       )
                              )
        Defendants.           )
_____)

## O R D E R

Before the Court are Plaintiff's Motion for Summary Judgment (Doc. 60), Defendant Mark Allen Wells, Yvonne Wells, and Douglas Pitts' Motion for Summary Judgment (Doc. 81), and Plaintiff's Motion for Oral Argument (Doc. 90).[1] For the following reasons, Plaintiff's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART** and Defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's motion for oral argument is **DISMISSED AS MOOT**. The Court hereby **DECLARES** that Plaintiff is not required to defend

---

[1] Defendants Christopher Tanner and Thomas Williams, II failed to respond to Plaintiff's motion, as such, they have waived their right to object. See Mitchell v. ConAgra Foods, Inc., 448 F. App'x 911, 912 (11th Cir. 2011) (holding that court was entitled to rule of motion for summary judgment when plaintiff failed to respond within applicable time limit).

or indemnify in <u>Mark Allen Wells v. Bull River Marina, et al.</u>, Case No. STCV1100788, under the 50C policy. Also, Plaintiff is not required to defend or indemnify in <u>Mark Allen Wells v. Christopher Tanner</u>, Case No: STCV1201595; <u>Yvonne Wells v. Bull River Marina, et al.</u>, Case No. STCV1201594; or <u>Douglas Pitts v. Bull River Marina, et al.</u>, Case No. STCV1201585, under either the 50C or 50M policies. However, Plaintiff is required to provide a defense in <u>Mark Allen Wells v. Bull River Marina, et al.</u>, Case No. STCV1100788, under the 50M policy.

**BACKGROUND**

This case arises from a fishing tour gone awry. On September 18, 2009 Defendant Mark Allen Wells and Douglas Pitts, along with two other companions, booked an offshore fishing trip through Defendant Bull River Marina, LLC ("Bull River"). (Doc. 60, Attach. 1 ¶¶ 11-17.) Defendant Bull River's manager at the time was Chris Tanner, who was the son of Defendant Bull River's CEO and President, Fred Tanner. (Doc. 77 at 2.) Defendant Bull River agreed to provide the vessel and captain for the excursion and subsequently chartered the <u>Nauti-Dawg</u>, a catamaran, from its owner Michael Dick.[2] (Doc. 60, Attach. 1 ¶¶ 12, 13-15, 17.) Defendant Bull River selected Thomas Williams II as the captain for the excursion, and provided bait and the charter crew. (<u>Id.</u>

---

[2] Bull River had been making payments to Michael Dick as well as paying for maintenance and insurance as part of a purchase agreement for the <u>Nauti-Dawg</u>. (Doc. 60, Attach. 5 at 18-19, 32.)

¶ 20.) Defendant Bull River agreed with Defendants Wells and Pitts that payment would be rendered at the conclusion of the trip. (Id. ¶ 17.)

The tour however, did not go as planned. Defendants allege that the Nauti-Dawg experienced rough waters during the fishing trip. (Id. ¶ 26.) At some point in time, the catamaran hit a large wave and the passengers, particularly Defendants Wells and Pitts, were vaulted up and out of their seats (id. ¶ 30), and slammed back down onto the bow seating (id. ¶¶ 30-31). As a result, Defendants Wells and Pitts sustained severe injuries to their backs and spines. (Id. ¶ 31.) As a result, the excursion was aborted and the Nauti-Dawg returned to shore so that Defendants Mark Wells and Pitts could obtain medical attention. Defendant Bull River Marina did not charge the passenger Defendants for the trip. (Doc. 76 at 2.)

At the time of the incident, Defendant Bull River was insured under two policies with Plaintiff North American Specialty Insurance Company ("NAIC"). The first policy—identified as the "50C" policy—was a commercial general liability policy, while the second policy-identified as the "50M" policy-was a Marina Operators Policy. (Doc. 60 at 4.) After the events of September 18, 2009, Defendant Bull River Marina contacted its insurance broker to determine potential coverage under these policies. (Doc. 70, Attachs. 3-5.) On

November 12, 2009, the insurance broker forwarded a notice of the potential claim to Plaintiff NAIC. (Id.) Plaintiff NAIC assigned Cheryl Moore to act as the adjuster for the claim. (Doc. 70 at 8.) Ms. Moore spoke about the incident with Fred Tanner, who also faxed her written statements and the Coast Guard boarding report from the incident. (Id. at 6-7.) However, Plaintiff closed its file in May or June of 2010 because there was no further contact from Defendant Bull River regarding the incident. (Id. at 7.)

On April 7, 2011, Defendant Wells filed a tort action in the State Court of Chatham County against Defendants Bull River and Williams.[3] (Doc. 1, Attach. 1.) Once again, Defendant Bull River contacted Plaintiff and forwarded copies of the lawsuit to Plaintiff and Ms. Moore. (Doc. 70 at 8.) Ms. Moore again spoke with Fred Tanner regarding the suit. According to Ms. Moore, she indicated during this conversation that Plaintiff had concerns regarding coverage under the policies, but told Fred Tanner that she would assign the case to an attorney pending further investigation. (Id. at 9.) On May 19, 2011, Ms. Moore sent a reservation-of-rights letter to Defendant Bull River. (Doc. 67, Attach. 5.) This letter referenced only one of the two policies

_____

[3] Defendant Wells also named Michael Dick as a defendant, but that claim was dismissed as the parties reached a settlement. (Doc. 77 at 3.)

under which Defendant Bull River was insured—the 50C Policy. (Doc. 91, Attach. 4.) The letter stated that,

> [d]ue to the allegations contained in the complaint, we need to undertake an in depth review of the policy to determine if coverage is triggered under these circumstances. . . . In the interim, we have assigned the law firm of Scrudder, Bass, Quillian, Horlock, Taylor & Lazarus to enter an appearance in court on your behalf and to protect your interests in accordance with the terms of your policy. However, we are providing a defense of this action under a complete Reservation of Rights, including the right to withdraw from the defense should it be determined no coverage is afforded.

> . . . [T]he preceding statement of the company's position with respect to coverage is not intended, nor shall it be construed, as a waiver or relinquishment of any term, provision, exclusion or condition of any policy pertaining to this matter, nor of any other right or a defense the company may have under the circumstances.

(Doc. 67, Attach. 5.) The letter was sent to Bull River Marina, LLC c/o Fred Tanner at an address in "Beauford, Georgia" rather than "Buford, Georgia," where Fred Tanner lived. (Id.) However, the address utilized the correct zip code. (Id.) Fred Tanner now testifies that he does not recall getting this letter, though his statement was not unequivocal. (Doc. 69 at 25-26.) He also noted that "there might have been" a letter. (Id.) Sometime after Plaintiff sent the reservation-of-rights letter, Fred Tanner asked that all mail relevant to Bull River Marina be sent to his home address in Buford, Georgia. (Doc. 70, Attach. 18 at 16; Doc. 77 at 8.)

On April 4, 2012, Plaintiff NAIC's coverage counsel sent Defendant Bull River a second reservation-of-rights letter. (Doc. 67, Attach. 6.) This new letter applied to both policies and set forth in detail several reasons why Plaintiff NAIC believed Defendant Bull River was not entitled to coverage. (Id.) Plaintiff's coverage counsel sent this letter to Defendant Bull River's Old Tybee Road address, where it was signed for by Gary Hill. (Id.) Mr. Hill would occasionally accept mail for Defendant Bull River and also manned the front desk. (Doc. 68 at 21.) Three days after the letter was sent, Defendant Bull River was sold in a short sale on April 7, 2012 following a filing of bankruptcy earlier that year.[4] (Doc. 77 at 3.)

After sending both reservation-of-rights letters, Plaintiff filed this declaratory judgment action on May 23, 2012 seeking a declaration that it has no duty to defend or indemnify[5] Defendant

[4] No stay of bankruptcy was entered in this case and Defendant Bull River Marina's bankruptcy case was dismissed in April of 2012. (Doc. 77 at 3.)

[5] Generally, the duty to defend is distinct from a duty to indemnify. See City of Atlanta v. St. Paul Fire & Mar. Ins. Co., 231 Ga. App. 206, 208, 498 S.E.2d 782, 785 (1998). However, Defendants provided no argument opposing a resolution of the question of indemnification and the resolution of Plaintiff's duty to defend is so inextricably intertwined with its duty to indemnify that finding an absence of any duty to defend is dispositive of both issues. See, e.g., Phila. Indem. Ins. Co. v. Yachtsman's Inn Condo Ass'n, Inc., 595 F. Supp. 2d 1319, 1322 (S.D. Fla. 2009) ("[A] court's determination that the insurer has no duty to defend requires a finding that there is no duty to indemnify.") Accordingly, practicality and judicial economy warrant the exercise of this Court's discretion to provide a

Bull River Marina.[6] (Doc. 1.) While Plaintiff's attorneys repeatedly requested that Defendants Wells and Pitt's attorneys agree to stay the concurrently pending state court proceedings, Defendants' counsel declined to respond to these requests. (Doc. 91, Attach. 1.) Beyond answering the complaints and filing certain discovery documents, no additional filings have been made in any of the cases presently pending in state court.

In September of 2012, Defendants Yvonne Wells and Pitts filed suits against Defendant Bull River for loss of consortium and personal injuries, and Defendant Mark Wells also filed suit against Defendant Chris Tanner. (Doc. 29, Attachs. 2-4.) Plaintiff's coverage counsel sent two additional reservation-of-rights letters on October 18, 2012 to Defendant Bull River at its Old Tybee Road address and Defendant Chris Tanner—Bull River's registered agent—at the address listed on the Secretary of State's website. (Doc. 67, Attach. 7; Doc. 67, Attach. 8.) On February 8, 2013, Plaintiff NAIC also requested an amendment of this declaratory judgment action to include the newly filed cases. (Doc. 29.)

---

declaratory judgment with respect to both Plaintiff's duty to defend and duty to indemnify. See Edwards v. Sharkey, 747 F.2d 684, 686-87 (11th Cir. 1984).

[6] The Court previously granted Plaintiff's motion to enter default judgment against Defendant Bull River Marina. (Doc. 96 at 11.)

Plaintiff now requests that this Court enter an order stating that Plaintiff is not obligated to insure Defendant Bull River under the terms of either policy. Defendants disagree, contending that Plaintiff waived its rights to defend against the suits because Plaintiff failed to provide a legally sufficient reservation-of-rights, inappropriately mailed the reservation-of-rights letters it did send, failed to timely file a declaratory judgment action, and failed to stay the underlying suit. In the alternative, Defendants allege that they are afforded coverage under both the 50M and 50C policies.

## ANALYSIS

### I. <u>STANDARD OF REVIEW</u>

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (<u>quoting</u> Fed. R. Civ. P. 56 advisory committee notes). Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable

fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

II. RESERVATION-OF-RIGHTS

A. Whether Plaintiff Properly Reserved its Rights Under Georgia Law

In this case, Plaintiff sent three sets of reservation-of-rights letters on three different occasions. The first letter, sent by Plaintiff on May 19, 2011 in response to Defendant Mark Wells's initial suit, acknowledged receipt of the summons and complaint sent by Defendant Wells, stated that a coverage review was ongoing, noted that a defense would be provided subject to a complete reservation of rights, and pointed out that the letter did not waive or relinquish any of Plaintiff's defenses. (Doc. 82, Attach. 1.) This letter addressed only the 50C policy. (Id.) Plaintiff's coverage counsel sent a second, more detailed, letter on April 4, 2012. (Doc. 82, Attach. 2.) It referenced specific provisions in both the 50C and 50M policies upon which Plaintiff relied to deny coverage to Defendant Bull River. (Id.) Plaintiff sent a third reservation-of-rights letter on October 18, 2012 in response to the new cases filed in September of 2012 by Defendants Mark Wells, Yvonne Wells, and Pitts. (Doc. 82, Attach. 4.) The letter contained generally the same information

10

as the April 4, 2012 letter. (Id.)

### 1. Defendant Mark Well's Initial Suit and Plaintiff's Initial Letter

Despite these three letters, Defendants argue that Plaintiff waived its rights to decline coverage because it failed to timely and appropriately reserve its rights under Georgia law. First, Defendants argue that Plaintiff failed to reserve its rights as to Defendant Mark Wells's initial suit. Defendants cite to World Harvest Church, Inc. v. GuideOne Mut. Ins. Co., 287 Ga. 149, 695 S.E.2d 6 (2010), for the proposition that, to effect a legal reservation, Plaintiff was required to specifically outline, in detail, each of the grounds upon which it could deny coverage. (Doc. 77 at 12-13.) Defendants also argue that this Court should look solely to the May 19, 2011 letter to evaluate the reservation-of-rights requirements for Defendant Mark Wells's first suit because the April 4, 2012 letter was sent too late. (Id. at 14-15.)

Regardless of whether the second letter was untimely, the Court concludes that Plaintiff's May 19, 2011 letter sufficiently reserved Plaintiff's rights to deny coverage against Defendant Mark Wells's initial suit. Generally,

> [w]here an insurer is faced with a decision regarding how to handle a claim of coverage at the time a lawsuit is pending against its insured, the insurer has three options. First, the insurer can defend the claim, thereby waiving its policy defenses. Second, the insurer can deny coverage and refuse to defend,

11

leaving the policy defenses open for future litigation. Or, third, the insurer can defend under a reservation of rights.

Hoover v. Maxum Indem. Co., 291 Ga. 402, 404-05, 730 S.E.2d 413, 416 (2012)(internal citations omitted). Where an insurer elects to defend under a reservation of rights it must, at a minimum, "fairly inform 'the insured that, notwithstanding [the insurer's] defense of the action, it disclaims liability and does not waive the defenses available to it against the insured.' " World Harvest, 287 Ga. at 152, 695 S.E.2d at 10 (2010) (quoting State Farm Mut. Auto Ins. Co. v. Anderson, 104 Ga. App. 815, 818, 123 S.E.2d 191, 193 (1961)). World Harvest has been interpreted "to require the [insurer] to fairly inform the insured that it is defending under a reservation of rights, but to only recommend that the insurer provide the specific basis for the reservation." Wellons, Inc. v. Lexington Ins. Co., 566 F. App'x 813, 821 (11th Cir. 2014)(emphasis in original). Furthermore, "broad reservation of rights language is sufficient to protect an insurer from coverage by estoppel." Id. at 822 (citing Anderson, 104 Ga. App. 815, 123 S.E.2d 191 (1961); State Farm Fire & Cas. Co. v. Walnut Ave. Partners, LLC, 296 Ga. App. 648, 674 S.E.2d 534 (2009)). This reading is based on the fact that "the insurer may not know of certain coverage defenses until discovery has been completed and the insurer has completed its investigation," so insurers should be afforded some time to

accurately gauge the circumstances before being required to provide in depth detail pertaining to a reservation. Wellons, 566 F. App'x at 822. Likewise, "the consent of an insured to an insurer's reservation of rights, including the terms of the reservation, 'may be express or implied [from] the insured's tacit acquiescence in the insurer's unilateral reservation of right[s]; e.g. when the insured, after giving notice, permits the insurer to continue the defense of the suit." Id. (quoting Anderson, 104 Ga. App. at 818, 123 S.E.2d at 193). However, insureds are not without their own opportunity for recourse because "[f]or a reservation of rights to be effective, the reservation must be unambiguous; if it is ambiguous, 'the purported reservation of rights must be construed strictly against the insurer and liberally in favor of the insured.' " World Harvest, 287 Ga. at 152-53, 695 S.E.2d at 10 (2010) (quoting Canal Ins. Co. v. Flores, 524 F. Supp. 2d 828, 834 (W.D. Tex. 2007)).

Based on the Eleventh Circuit Court of Appeals' decision in Wellons, this Court concludes that Plaintiff's May 19, 2011 letter was sufficient to reserve Plaintiff's rights as to the 50C policy. Plaintiff clearly stated that it would defend Defendant Bull River only under a complete reservation of rights, and stated that nothing in the letter was to be construed as a waiver of any right or defenses that Plaintiff

may possess. (Doc. 82, Attach. 1.) Furthermore, there is no evidence that Defendants Bull River or Christopher Tanner objected to this letter. As a result, the letter was sufficient to reserve Plaintiff's rights according to the guidance set forth in Wellons.

However, what is less clear is whether Plaintiff's May 19, 2011 letter, or any other correspondence, properly reserved Plaintiff's rights under the 50M policy. Plaintiff has stated that "NAS never undertook the defense of Bull River pursuant to the '50M' policy." (Doc. 89 at 5.) Nevertheless, on April 4, 2012, Plaintiff felt it necessary to send a supplemental reservation-of-rights letter referencing both policies, noting that Plaintiff would continue to defend pending a resolution of coverage disputes, and purporting to also reserve its rights under the 50M policy. (Doc. 82, Attach. 2 at 6.)

While this Court agrees that coverage is not likely afforded by the strict language of the 50M policy, the Court is constrained to conclude that Plaintiff failed to properly reserve its rights as to this policy. In this case, Plaintiff's May 19, 2011 letter was ambiguous as to the exact policies at issue. Generally, ambiguity must be construed in favor of the insured. World Harvest, 287 Ga. at 152-53, 695 S.E.2d at 10 (2010) (quoting Flores, 524 F. Supp. 2d at 834 (W.D. Tex. 2007)). Because the reservation-of-rights letter did not clearly

note that it covers the 50M policy, it must be construed against the insurer as an ineffective reservation. Because Plaintiff took control of Defendant's representation without effectively communicating that its defense under the 50M policy was subject to a reservation of rights, it is estopped from arguing non-coverage now. See Jones v. Ga. Cas. & Sur. Co., 89 Ga. App. 181, 185-86, 78 S.E.2d 861, 864 (1953) (concluding that a liability insurer with knowledge of forfeiture or noncoverage who assumes and conducts a defense without "without disclaiming liability and giving notice of its reservation of rights, it is . . . precluded . . . from setting up such ground of forfeiture or noncoverage.").

Even if the May 19, 2011 letter were not ambiguous, Plaintiff's April 4, 2012 reservation-of-rights letter would result in a finding for Defendants. An insurer may not "both deny [a] claim outright and attempt to reserve the right to assert a different defense in the future." Hoover, 291 Ga. at 405, 730 S.E. at 416. However, here that is exactly what Plaintiff attempted to do. Plaintiff argues both that the policy was never triggered, which justifies the absence of a reference to the policy in the May 19, 2011 letter (Doc. 89 at 5), and attempts to reserve its rights in the April 4, 2012 letter. This is simply something that Plaintiff cannot do. As a result, this Court concludes that Plaintiff failed to properly reserve its

rights under the 50M policy. Defendants' motion for summary judgment as to the 50M policy for Defendant Wells initial claim is therefore **GRANTED.**

> 2. *Defendant Mark Wells's Second Suit, Defendant Yvonne Wells's, and Pitt's Initial Suits and Plaintiff's Second and Third Letters*

The Court concludes that Plaintiff's October 18, 2012 letter regarding Defendant Mark Wells's second suit and Defendants Yvonne Wells's and Pitts's initial suits is sufficient to reserve Plaintiff's rights. The letter complies with the requirements of Wellons and also provides the specific detail suggested in World Harvest. The letter clearly delineates the reasons why Plaintiff does not believe that coverage should be afforded, and states that Plaintiff is offering a defense under a reservation of rights for both the 50C and 50M policies. (Doc. 82, Attach. 4.) As a result, the letters are legally sufficient to reserve Plaintiff's rights with respect to those suits.

B. Whether Defendant Bull River Received Notice of the Reservation

Defendants argue in the alternative that, even if the reservation-of-rights letters were legally sufficient, none of the letters were mailed appropriately and, thus, Plaintiff's reservation must fail for lack of notice. (Doc. 83 at 14.) Regarding the May 19, 2011 letter, the Defendants first argue

that there is nothing in the record to prove that the April 7th letter was received by either Fred or Chris Tanner. However, this argument is a non-starter. Defendants do not argue that Defendant Bull River Marina never actually received the letter. Instead, they argue that Fred Tanner "do[es] not recall" receiving the letter. (Doc. 60 at 31.) Unfortunately, Plaintiff has presented a certified letter receipt indicating that the mailing actually did take place. (Doc. 91, Attach. 5.) As a result, this Court concludes that there is no question of material fact as to whether Defendant Bull River received the initial letter.

Defendants' arguments as to the April 4, 2012 and October 18, 2012 letters also fail. These letters were sent to Bull River Marina at its Old Tybee Road address, to Defendant Chris Tanner at the same address, and to Defendant Chris Tanner at his home. (Doc. 83 at 14-15.) However, the letter to Defendant Chris Tanner was sent to his home on "Brittlewood Avenue" rather than "Brittlewood Drive," which was the correct address. (Id. at 15.) Defendants contend that Defendant Bull River was not receiving mail at its Old Tybee Road address, that all mail should have been forwarded to Fred Tanner at the address he requested Plaintiff send mail to in Buford, Georgia, and that Chris Tanner's mail was improperly addressed.

First, the Court finds it odd that the Defendants would assert that Defendant Bull River Marina was not receiving mail at the 8005 Old Tybee Road location. On August, 23, 2012 Fred Tanner used Bull River Marina, LLC stationary to send a letter to the Court detailing the sale of the Marina. (Doc. 9.) In this letter, Fred Tanner did not provide to this Court an alternate address for correspondence, effectively indicating that future mail to the Old Tybee Island Road address would be acceptable. (Id.) The purported error in the address for Defendant Chris Tanner is also not material. Defendant Chris Tanner is the registered agent of Defendant Bull River Marina and the letter was sent to the address listed on the Secretary of State's website.[7] See Bricks v. Walker Showcase, Inc., 255 Ga. 122, 123, 336 S.E.2d 37, 38 (1985)("All that is required under the Corporation Code is that the process server make a reasonably diligent effort to serve the registered agent at the registered office of the corporation.").

Finally, even if Defendant Bull River did not receive any of the letters that Plaintiff sent, the Court would still conclude that Defendants received sufficient notice of Plaintiff's intent to reserve its rights. The current

---

[7] The Court is extremely skeptical of Defendants' argument that Defendant Chris Tanner's correct address is 1019 Brittlewood Drive rather than Brittlewood Avenue, particularly as Defendant Chris Tanner is listed as the registered agent for Bull River Marina, LLC and can be served at 1019 Brittlewood Avenue.

declaratory judgment action was pending before this Court at the time the new suits were filed and Plaintiff mailed the October 18, 2012 letter. Plaintiff filed a Motion to Amend Complaint to Add Parties in this case on November 11, 2012, less than a month after sending the reservation-of-rights letters and less than two months after receiving notice of the new suits. (Doc. 19.) Plaintiff specifically requested the amendment to allow the Court to incorporate the three additional lawsuits. (Id. at 1.) Plaintiff certified that all parties were served on November 12, 2012.[8] (Id. at 4.) As a result, the motion to amend would have been sufficient to put Defendants on notice that Plaintiff was defending purely under a reservation of rights. While this Court acknowledges that this is an unusual method for providing a reservation of rights notification, it does not run afoul of Georgia law, which allows an insurer to reserve its rights in a number of ways. World Harvest, 287 Ga. at 152. As a result, this Court concludes that the motion to amend, which included substantially all of the information from the October 18, 2012 letter, complied with the requirements of Wellons and World Harvest, and was served on all parties, was sufficient to reserve Plaintiff's rights.

---

[8] Defendant Bull River Marina was served through its registered agent, Christopher Tanner at the 1019 Brittlewood Avenue address, and Defendants Mark Wells, Yvonne Wells, and Douglas Pitts were served through their attorney. (Doc. 19 at 4.)

C. Whether Plaintiff was Required to Enter a Stay

The Defendants argue that Plaintiff should be enjoined from bringing this declaratory judgment action because Plaintiff failed to timely file either the currently pending declaratory judgment action or a stay in the underlying state case. (Doc. 77 at 16.) The Court, however, finds that argument unavailing. First, Plaintiff has put into the record unrebutted evidence that on multiple occasions it sought a stay in the pending state cases, but that counsel for Defendants failed to timely respond. (Doc. 91.) Second, the initial action has been under a bankruptcy stay since March 2, 2012. See Wells v. Bull River Marina, LLC et al., STCV 1100788. Finally, Defendants have put forth no evidence that the remaining lawsuits suffered from any kind of inappropriate litigation during the time between when Plaintiff sent the letters reserving its rights and when Plaintiff filed the present declaratory judgment action.

In the alternative, Defendants argue that Plaintiff was required to file a declaratory judgment immediately to avoid defenses of waiver and estopple. However, that is inaccurate. An insurer is only required to file a declaratory judgment action immediately when an insured objects to his insurer's reservation of rights. Jacore Sys., Inc. v. Cent. Mut. Ins. Co., 194 Ga. App. 512, 514, 390 S.E.2d 876, 878 (1990); see also Boatright v. Old Dominion Ins. Co., 304 Ga. App. 119, 124, 695 S.E.2d 408,

413 (2010). Here, absent evidence that Defendant Bull River objected to the reservation of rights, Plaintiff was not required to file a declaratory judgment immediately.

III. <u>INSURANCE CONTRACT COVERAGE</u>

A. <u>The 50M Policy</u>

Plaintiff notes that "Defendants do not dispute that the Marina Operators Policy, policy number 50M0005405-00 (the "50 M" policy), is inapplicable to provide coverage for the underlying allegations." (Doc. 60 at 4.) While it appears that Defendants disagree about whether Plaintiff waived any defenses under the policies, they do not provide any argument offering support for coverage under the 50M policy if the reservation of rights letters were sufficient.[9] (Doc. 77 at 17.) As a result, to the extent that this Court has held that Plaintiff properly reserved its rights to defend against the 50M policy, Plaintiff's request for summary judgment is **GRANTED**. Plaintiff has no obligation under the 50M policy to defend <u>Mark Allen Wells v. Christopher Tanner</u>, Case No: STCV1201595; <u>Yvonne Wells v. Bull River Marina,</u>

---

[9] "Mr. and Mrs. Wells and Mr. Pitts would submit that the Court need not reach the merits of this case if it rules in favor of these Defendants to the effect that NASIC waived any defense and is estopped to assert any exception to coverage under the either [sic] '50C' or '50M' policies, due to its failing to properly and timely reserve its rights prior to undertaking defense of the insureds in the underlying tort actions. However, out of an abundance of caution, these Defendants will herein address the merits, showing that the '50C' exception to the watercraft exclusion is ambiguous . . . ." (Doc. 77 at 17.)

*et al.*, Case No: STCV1201594; and <u>Douglas Pitts v. Bull River</u> <u>Marina, et al.</u>, Case No: STCV1201585.

B. <u>The 50C Policy</u>

There is, however, a dispute as to coverage under the 50C policy. To avoid a duty to defend or indemnify, the allegations of the complaint must unambiguously exclude coverage under the policy. <u>JNJ Found. Specialists, Inc. v. D.R. Horton, Inc.</u>, 311 Ga. App. 269, 271, 717 S.E.2d 219, 223 (2011). " 'Thus, the issue is not whether the insured is actually liable to the plaintiffs in the underlying action; the issue is whether a claim has been asserted which falls within the policy coverage and which the insurer has a duty to defend.' " <u>Bituminous Cas.</u> <u>Corp. v. N. Ins. Co. of N.Y.</u>, 249 Ga. App. 532, 533, 548 S.E.2d 495, 497 (2001)(<u>quoting</u> <u>Penn-Am. Ins. Co. v. Disabled Am.</u> <u>Veterans</u>, 224 Ga. App. 557, 558, 481 S.E.2d 850, 851 (1997)). Here, Plaintiff argues that the policy does not apply to "watercraft owned or operated by or rented or loaned to any insured." (Doc. 60 at 5.) Defendants agree that this provision, standing alone, operates to exclude coverage. (Doc. 77 at 18.) However, they note that the policy includes an exception to the exclusion. That exception states:

> This exclusion does not apply to:
> (2)  A watercraft you do not own that is:
>      (a) less than 60 feet long; and
>      (b) not being used to carry persons or property
>      for a charge.

(Doc. 89 at 23.)

There is no question that the Nauti-Dawg is less than 60 feet long. (Doc. 89, p. 23 n.7.) Thus, the exception is only applicable if Defendant Bull River Marina was not the owner of the Nauti-Dawg and did not use it to carry persons or property for a charge. In this case, the Court concludes that there is no material dispute of fact that the Nauti-Dawg was being used to carry persons or property for a charge and that the terms of the insurance contract are unambiguous. As a result, the exception to the exclusion does not apply.

Exceptions to exclusionary insurance coverage provisions similar to the one at issue in this case are commonly found in automobile insurance contracts. See Randy J. Sutton, Annotation, What Constitutes Use of Automobile "to Carry Persons or Property For Fee" Within Exclusion of Automobile Insurance Policy, 57 A.L.R.5th 591 (originally published in 1998). Courts have differed on determining when a vehicle was being used to carry a passenger for a fee. Generally, the outcome depends on the circumstances of the transportation. For example, while "an expense-splitting passenger can become an invitee in Georgia, he does not necessarily become a passenger carried for consideration so as to preclude insurance coverage." Eason v. Weaver, 557 F.2d 1202, 1206 (5th Cir. 1977) (citing Eason v.

_Weaver_, 402 F. Supp. 508 (S.D. Ga. 1974)).[10] However, vans carrying children to and from their homes and a day-care center for a fee of $1.00 are considered to be carrying a passenger for a fee. _Johnson v. Allstate Ins. Co._, 505 So. 2d 362 (Ala. 1987). Here the Court concludes that there is no ambiguity that the insurance contract does not cover claims like that asserted by Defendants. The _Nauti-Dawg_ was hired by Defendants Wells and Pitt's companion Mr. McCleese, who was to "be charged upon successful completion of the fishing trip." (Doc. 77 at 22-23.) To further this end, Defendant Bull River made a copy of Mr. McCleese's credit card prior to the trip commencing. (_Id._) Additionally, the boat was hired to take Defendants Wells and Pitts to the ocean so that they could enjoy a fishing experience with which they were unfamiliar. (Doc. 1, Attach. 1 ¶ 24.) Thus, the _Nauti-Dawg's_ operation is most similar to the vans in Johnson rather than the passenger fare sharing circumstance described in _Eason_.

Defendants, however, contend that under _Rowe v. U.S. Fid. & Guar. Co._, 375 F.2d 215 (4th Cir. 1967), individuals who have not yet paid for a trip are not considered passengers for a charge. However, that case is not on point. In _Rowe_, certain

_____

[10] In _Bonner v. City of Prichard_, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

individuals were taken on a demonstration cruise with the possibility, although not the promise, that they would purchase the boat at a later time. The court concluded that "a prospective purchaser of a boat or vehicle was [not] to be regarded as a 'passenger for a charge'." Rowe, 375 F.2d at 218. Here, not only was there an affirmative and concrete promise to pay at the conclusion of the fishing excursion, the means of payment had already been exchanged when the credit card information was given to Defendant Bull River. Thus, Defendants Wells and Pitts are distinctly unlike the passengers described in Rowe where the prospective purchasers had no obligation to pay for the boat at the trip's conclusion, but had merely indicated an interest in potentially paying.

Furthermore, basing a decision regarding potential insurance payments on whether that person has paid when they are injured would be illogical. Such a reading would require that individuals taking taxi rides, for example, not be considered "passengers for a charge" during the time in which they are in the taxi, but before they have paid. However, those individuals would be retroactively considered "passengers for a charge" immediately after payment at the conclusion of the trip. See Blair v. Suard Barge Servs., Inc., 2004 WL 325428, at *9 (E.D. La. Feb. 18, 2004) ("To hold otherwise would be to allow a barge to literally float in and out of insurance coverage.).

**CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. 60) is **GRANTED IN PART** and **DENIED IN PART** and Defendants' Motion for Summary Judgment (Doc. 81) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's Motion for Oral Argument (Doc. 90) is **DISMISSED AS MOOT**. The Court hereby **DECLARES** that Plaintiff is not required to defend or indemnify Mark Allen Wells v. Bull River Marina, et al., Case No. STCV1100788, under the 50C policy. Also, Plaintiff is not required to defend or indemnify Mark Allen Wells v. Christopher Tanner, Case No: STCV1201595; Yvonne Wells v. Bull River Marina, et al., Case No. STCV1201594; or Douglas Pitts v. Bull River Marina, et al., Case No. STCV1201585, under either the 50C or 50M policies. However, Plaintiff is required to provide a defense in Mark Allen Wells v. Bull River Marina, et al., Case No. STCV1100788, under the 50M policy. All other pending motions in this case are **DISMISSED AS MOOT**. The Clerk of Court is **DIRECTED** to close this case.

SO ORDERED this *26th* day of January 2016.

_____
WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA